**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2024**

# In the Court of Appeals of Georgia

A23A1527. PATRICK et al v. KINGSTON.

DILLARD, Presiding Judge.

In this action, Charles Patrick, Martha Patrick (now Davis), and Michael Smith, as administrator of the estate of Jennifer L. Patrick ("Plaintiffs"), sued Megan Kingston, seeking damages arising from a motor-vehicle accident that resulted in Jennifer's death. Subsequently, Kingston filed a motion to enforce a settlement agreement, which the trial court granted. On appeal, Plaintiffs contend the trial court erred in granting the motion, arguing the insurer's purported acceptance was not identical to their offer and further contending that the court exceeded its jurisdiction by requiring specific performance from the insurer. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

We apply a *de novo* standard of review to "a trial court's order on a motion to enforce a settlement agreement."[1] And because the issues raised are

> analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case.[2]

Consequently, we view the evidence in "a light most favorable to the nonmoving party."[3]

So viewed, the record shows that shortly after midnight on September 19, 2020, Jennifer Patrick was driving westbound on State Route 316 just outside of Athens. Around that same time, several other motorists observed Kingston's vehicle turn onto the westbound lane of 316, but heading eastbound into oncoming traffic. These motorists used their vehicle's horns and flashed their high-beam headlights in an effort to alert Kingston, but they were unsuccessful in doing so. And not long after

---

[1] *Pritchard v. Mendoza*, 357 Ga. App. 283, 283 (850 SE2d 472) (2020) (punctuation omitted).

[2] *Id.* (punctuation omitted).

[3] *Id.* (punctuation omitted).

that, Kingston's vehicle collided with Patrick's vehicle, resulting in Patrick suffering fatal injuries.

At the time of the accident, Kingston had liability insurance coverage through Progressive Premier Insurance Company of Illinois ("Progressive"). And on February 11, 2021, the attorney representing Charles Patrick and Martha Davis (Patrick's parents), and Smith—the administrator of her estate—sent Progressive a time-limited settlement offer, via mail, in accordance with the version of OCGA § 9-11-67.1 applicable at the time.[4] The offer of compromise—which was conditioned on being accepted "unequivocally and without variance of any sort"—provided, in part, as follows:

> The material terms of this written offer of compromise to Progressive made pursuant to OCGA § 9-11-67.1 (a) are as follows:
>
> 1. The time period within which the material terms pursuant to OCGA § 9-11-67.1 (a) must be accepted is thirty-five (35) days from your receipt of this offer;

---

[4] The statute was amended in 2021, but those amendments did not become effective until after July 1, 2021, and so are not applicable in this matter. *See* OCGA § 9-11-67.1 (h) ("This Code section shall apply to causes of action for personal injury, bodily injury, and death arising from the use of a motor vehicle on or after July 1, 2021."); *see also* Ga. L. 2021, p. 431, § 1.

2. The amount of monetary payment is Progressive's bodily injury liability policy limit of $25,000.00 . . . ;

3. The party that the Claimants will release is Megan Kingston;

4. The Claimants cannot offer a full and final release at this time; instead, the type of release that the Claimants will provide to Megan Kingston is a release that is limited so that it will not prejudice the Claimants' right to seek recovery from any other insurance coverage that may be available, and the Claimants will not agree to a release of any other type; and

5. The claims to be released by the Claimants are "all claims of Charles Patrick and Martha Davis for the wrongful death of Jennifer Lee Patrick and all claims of the Estate of Jennifer Lee Patrick for pain and suffering and the funeral, medical, and other necessary expenses resulting from the injury and death of Jennifer Lee Patrick," and the Claimants will not release any other claims of any other kind or description.

The offer letter then explained that creating a binding settlement required both written acceptance and performance of specific actions:

Pursuant to OCGA § 9-11-67.1 (b), acceptance of the material terms made pursuant to OCGA § 9-11-67.1 (a) is to be made by providing written acceptance of the material terms outlined immediately above pursuant to OCGA § 9-11-67.1 (a) in their entirety.

Providing written acceptance of the materials terms outlined above pursuant to OCGA § 9-11-67.1 (a) in their entirety is necessary to form a binding settlement contract, but it is not sufficient to form a binding settlement contract. In addition to the above, the following acts are material to acceptance and must be completed without variance of any sort to form a binding settlement contract . . .

1. Pursuant to OCGA § 9-11-67.1 (g), payment is required within 10 days after the written acceptance of this offer of compromise. Timely receipt of payment is a material condition of acceptance. As further clarification, to accept this offer of compromise, payment must be received at the office of Morgan & Morgan, 191 Peachtree Street, NE, Suite 4200, Atlanta, GA 30303, no later than 10 days after Progressive has provided written acceptance of the material terms of this offer made pursuant to OCGA § 9-11-67.1 (a). If payment is made in a form that requires a payee, payment must be made to "Charles Patrick, Martha Davis, the Estate of Jennifer Lee Patrick, and Morgan & Morgan Atlanta, PLLC.". . . If full payment is not received by the deadline, then this offer has not been accepted and there is no agreement.

2. Progressive must perform the act of delivering a release that fully complies with each and every term and condition of this offer as a condition of acceptance of this offer. The release must not include any additional terms, conditions, or representations by anyone that are not specifically offered in this offer of compromise. If the release includes any additional terms, conditions, or representations by anyone that are

not specifically offered in this offer of compromise, it will be a rejection and counteroffer. The release must be received by this firm together with the payment of policy limits as a condition of acceptance of this offer. If Progressive does not perform the act of delivering a release that fully complies with each and every requirement of this offer, this offer has not been accepted, and, instead, it will be a rejection of this offer. . . .

And after a lengthy discussion regarding the extent and scope of the law firm's representation of the Claimants (Plaintiffs), the directive that the compromise did not represent full compensation or satisfaction of Claimants' claims, and that the offer did not include any indemnification or waiver of Claimants' rights not specified therein, the offer added that:

[i]n addition to the requirements for the release, neither the settlement payment nor any other document sent by Progressive can include any terms, conditions, descriptions, or representations that are not permitted in the release. If Progressive sends any document (e.g., the written acceptance, the release, the settlement check, etc.) that includes any terms, conditions, descriptions, or representations that are not permitted in the release, it will be a counteroffer and rejection of this offer. . . .

Finally, and importantly, the offer advised that it had supplied

all information necessary to evaluate this offer of compromise; however, if you believe some additional information is necessary to evaluate this

offer of compromise, any request for additional information must be made as soon as possible and at least ten (10) days before the deadline for written acceptances so that we will have a reasonable opportunity to try to obtain the requested information . . . Each and every requirement for acceptance of this offer and every term and condition herein is material and is based on reasons important to the Claimants. Although Georgia law does not require an offeror to justify why specific terms and conditions are made part of an offer, we would be happy to explain the reasons for each and every requirement if it would encourage Progressive to accept this offer unequivocally and without variance of any sort. Should you have any questions or want any explanations at all regarding this offer of compromise, please do not hesitate to contact me . . . Although any requirements or requests for terms, conditions, or representations that are not approved herein will constitute a counteroffer and rejection of this offer of compromise. If you feel any part of this letter needs clarification in order for you to comply with its terms or conditions, we will be happy to offer that clarification so that you have a full and fair opportunity to comply with and accept this offer . . . Progressive shall have the right to seek clarification regarding terms . . . and other relevant facts. An attempt to seek clarification shall not be deemed a counteroffer.

On February 25, 2021, Progressive sent a response letter to Plaintiffs' counsel, noting that it was "unconditionally, unequivocally and without variance accepting the terms and conditions of your offer of settlement." The letter further indicated that

Progressive would "send the payment and release to your office within the time period set forth in your offer of settlement." And on March 2, 2021, Progressive sent Plaintiffs' counsel a check and a release. The check was in the amount of $25,000.00 and was made out to "CHARLES PATRICK MARTHA DAVIS THE ESTATE OF JENNIFER LEE AND MORGAN AND MORGAN ATLANTA PLLC." The release provided as follows:

> FOR AND IN CONSIDERATION OF the payment to us of the sum of Twenty-Five Thousand and 00/100 Dollars ($25,000.00), the receipt of which is hereby acknowledged, Charles Patrick and Martha Davis, individually and as surviving heirs of Jennifer Lee Patrick, and Michael T. Smith as the administrator of the Estate of Jennifer Lee Patrick, deceased, (hereinafter referred to as "Releasors"), being of lawful age, do release and forever discharge Megan Kingston (hereinafter referred to as "Limited Releasee"), except to the extent uninsured/underinsured motorist insurance coverage, other liability insurance coverage, or any other insurance coverage is available which covers the claim or claims or the Releasors against the Limited Releasee, of and from all claims of Charles Patrick and Martha Davis for the wrongful death of Jennifer Lee Patrick and all claims of the Estate of Jennifer Lee Patrick for the pain and suffering and the funeral, medical and other necessary expenses resulting from the injury and death of Jennifer Lee Patrick on account of or resulting from an occurrence or accident that happened on or about

September 19, 2020, on or near State Route 316, Oconee County, Georgia which resulted in the death of Jennifer Lee Patrick.

For the receipt of the sum of Twenty-Five Thousand and 00/100 Dollars ($25,000.00), we acknowledge that this Limited Release prevents us from enforcing any judgment against the personal assets of Limited Releasee, and will pursue recovery, in addition to that obtained pursuant to this Limited Release, from any uninsured or underinsured motorist carrier, other liability insurance carriers, or any other insurance coverage available which covers the claim or claims of the Releasors. This Limited Release shall not operate as a release of any other persons or entities not set forth above and shall not operate as a release of the Releasors' claim or claims against any other tortfeasor or other insurance carrier not named in this Limited Release.

On March 30, 2021, Plaintiffs' counsel sent a letter to Progressive, returning the $25,000.00 check. In this correspondence, Plaintiffs' counsel noted that Progressive had rejected the offer of settlement by, *inter alia*, sending "an invalid release that included multiple terms, conditions, and representations that were not offered." The letter then concluded that, given the failure to settle the matter, Plaintiffs would be filing suit in the near future. And indeed, on August 5, 2021, Plaintiffs filed a complaint in the State Court of Athens-Clarke County against Kingston and two Athens area taverns—the second of which was added in an

amendment to the complaint—that allegedly served alcoholic beverages to Kingston despite her being noticeably intoxicated.

Shortly thereafter, Kingston filed a motion to enforce settlement, arguing the acceptance to Plaintiffs' offer of compromise was unequivocal, unconditional, and identical and, thus, a binding agreement was formed. Plaintiffs filed a response, arguing that both the release and the payment varied in several respects from the terms of the offer and, as a result, amounted to a counteroffer at best. The trial court ultimately held a hearing on the matter, during which both parties presented arguments; and it concluded with the court taking the matter under advisement. Subsequently, the trial court granted Kingston's motion, ruling that Progressive's release and payment materially complied with the terms of Plaintiffs' offer. This appeal follows.

1. Plaintiffs contend the trial court erred in ruling that Progressive's acceptance materially complied with the terms of their offer, thus forming a settlement agreement. We agree, and so we reverse the trial court's judgment.

As our Supreme Court has explained, the version of OCGA § 9-11-67.1 in effect at the time Plaintiffs made their settlement offer was "[en]acted against the backdrop

of a large body of law on contract formation generally and settlement formation specifically."[5] And as part of that existing law, settlement agreements must "meet the same requirements of formation and enforceability as other contracts."[6] Importantly, there is no enforceable settlement between the parties "absent mutual agreement between them."[7] That existing law includes the "fundamental principle that an offeror is the master of his or her offer and free to set the terms thereof."[8] And along those lines, an offeror may include terms of acceptance establishing a "unilateral contract, whereby an offer calls for acceptance by an act rather than by communication."[9] So, if an offer "calls for an act, it can be accepted only by the doing

---

[5] *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (a) (797 SE2d 814) (2017) (punctuation omitted); *accord Pierce v. Banks*, 368 Ga. App. 496, 499 (2) (890 SE2d 402) (2023).

[6] *Woodard*, 300 Ga. at 852 (2) (a) (punctuation omitted); *accord Pierce*, 368 Ga. App. at 499 (2).

[7] *Woodard*, 300 Ga. at 852 (2) (a) (punctuation omitted); *accord Pierce*, 368 Ga. App. at 499 (2); *see Pritchard*, 357 Ga. App. at 287(noting "apart from such mutual agreement, no enforceable contract exists between the parties" (punctuation omitted)).

[8] *Woodard*, 300 Ga. at 853 (2) (a) (punctuation omitted); *accord Pierce*, 368 Ga. App. at 499 (2).

[9] *Woodard*, 300 Ga. at 853 (2) (a) (punctuation omitted); *accord Pierce*, 368 Ga. App. at 499 (2).

of the act."[10] And if the recipient of a pre-suit offer "fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds."[11]

Here, Plaintiffs contend—as they did in the trial court—that Progressive's release and payment varied from the terms of their offer in several key respects. For example, Plaintiffs assert that Progressive's check indicating on its face that it was "VOID IF NOT PRESENTED WITHIN 90 DAYS[,]" varied from the requirement in their offer that the settlement payment not "include any terms, conditions, descriptions, or representations that are not permitted in the release." In contrast, as the trial court concluded in its order granting the motion to enforce settlement, Kingston claims this variance is immaterial and that all financial institutions, under OCGA § 11-4-404, impose such restrictions on the amount of time checks are negotiable. But we recently found this argument lacking in merit.

The statute cited by Kingston and the trial court, OCGA § 11-4-404, provides that "[a] bank is under no obligation to a customer having a checking account to pay

_____

[10] *Pierce*, 368 Ga. App. at 499 (2) (punctuation omitted); *accord de Paz v. de Pineda*, 361 Ga. App. 293, 295 (2) (864 SE2d 134) (2021).

[11] *Pierce*, 368 Ga. App. at 499 (2) (emphasis and punctuation omitted); *accord de Paz*, 361 Ga. App. at 295 (2).

a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith." And rejecting the argument that an 180-day expiration period on a payment by check—double the length of the expiration period on Progressive's check here—was required and not at variance from the offer, we held in *Pierce v. Banks*,[12] that the "plain language of that provision does not dictate . . . that a check is automatically void after 180 days; instead, that provision merely provides that a bank *is under no obligation* to pay a check that is presented 180 days after its date but that it may do so in good faith."[13] We further explained that "[s]uch a reading is confirmed by the commentary to the Uniform Commercial Code ('UCC'),[14] which explains that there are instances in which a bank would recognize that a payor would actively seek

---

[12] 368 Ga. App. 496 (890 SE2d 402) (2023).

[13] *Id.* at 502 (2) (c) (emphasis in original).

[14] *See Coleman v. DaimlerChrysler Servs. of N. Am., LLC*, 276 Ga. App. 336, 339 n.3 (623 SE2d 189) (2005) ("In order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance." (citation and punctuation omitted)).

to have such a check paid."[15] Consequently, just as we held in *Pierce*, Kingston's reliance on OCGA § 11-4-404 is "unpersuasive; the statute does not adequately account for the disparity between [Plaintiffs'] offer and the subsequent settlement check."[16] Furthermore, as we also explained in *Pierce*, Kingston and Progressive "could have chosen a number of other means to provide payment to Plaintiffs,[17] yet they elected a payment method that . . . could not have satisfied the terms of the offer."[18]

When, like here, the recipient of a pre-suit offer "fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds."[19] And because a "purported acceptance of an offer that varies *even one term* of the

---

[15] *Pierce*, 368 Ga. App. at 502 (2) (c); *see also* UCC § 4-404 cmt. (noting that a bank "is given the option to pay [after the six-month period] because it may be in a position to know, as in the case of dividend checks, that the drawer wants payment made").

[16] *Pierce*, 368 Ga. App. at 502 (2) (c).

[17] *See* OCGA § 9-11-67.1 (f) (2013) (identifying a number of ways in which a pre-suit payment may be made, including cash, money order, wire transfer, a cashier's check, a draft or bank check, or electronic funds transfer).

[18] *Pierce*, 368 Ga. App. at 502 (2) (c).

[19] *Id.*; *accord de Paz*, 361 Ga. App. at 295 (2).

original offer is a counteroffer[,]"[20] it is unnecessary to discuss the other instances in which Plaintiffs argue Progressive's release and payment varied from the terms of the offer. Indeed, in light of these circumstances, there was no formation of a settlement agreement, and the trial court erred in granting Kingston's motion to enforce settlement.[21] Accordingly, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.[22]

---

[20] *Pritchard*, 357 Ga. App. at 288 (punctuation omitted).

[21] *See Pierce*, 368 Ga. App. at 502-03 (2) (c) (reversing trial court's grant of motion to enforce settlement because payment proffered by insurer in response to plaintiff's offer to settle personal injury claim, consisting of a check with notation that it was "void after 180 days," failed to comply with terms of offer stating that payment could not include any "expirations," and thus was not a valid acceptance, regardless of whether notation was standard language added to check by bank and applicable to all bank checks); *de Paz*, 361 Ga. App. at 296-97 (2) (a) (i) (reversing trial court's grant of motion to enforce settlement because offer called for timely payment to be received in plaintiff's counsel's office within specified time period, but insurer gave check to delivery service for delivery, and payment was lost and was not received until after time period expired).

[22] In her brief, Kingston laments that plaintiffs routinely "flood their offers with intentionally ambiguous terms, included solely in an attempt to 'catch' insurers acting in good faith and attempting to resolve disputes . . . ." But even assuming this is true in some cases, it strains credulity to claim as much here when the offer *repeatedly* emphasized the importance of strict compliance with its terms and invited the insurer to seek clarification of those terms if it had any doubt about their meaning. In any event, the policy concerns raised by Kingston on appeal are solely the province of the General Assembly, not this Court. *See BPG Inspection, LLC v. Omstead*, 367 Ga. App.

15

2. Plaintiffs also contend the trial court exceeded its jurisdiction by requiring specific performance from Progressive in the form of ordering it to redeliver the payment check. But given our holding in Division 1, *supra*, we need not address this issue.

*Judgment reversed and case remanded. Rickman and Pipkin, JJ., concur.*

---

128, 136 (1) (883 SE2d 593) (2023) ("It is fundamental that matters of public policy are entrusted to the General Assembly, and not this court." (punctuation omitted)).